UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HENRY BENITEZ,

                Petitioner,

           - v -                                  9:06-CV-0526
                                                        (GTS)
R.K. WOODS, Warden,

                Respondent.
_____

APPEARANCES:                                               OF COUNSEL:

HENRY BENITEZ, 97-A-2553
  Petitioner, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
309 Bare Hill Road
Malone, NY 12953

HON. ANDREW M. CUOMO                        ALYSON J. GILL, ESQ.
Attorney General for the State of New York       Assistant Attorney General
  Counsel for Respondent
120 Broadway
New York, NY 10271

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

**I.    BACKGROUND**

       The state court record reflects that on July 9, 2002, petitioner, *pro se* Henry Benitez was incarcerated at the Auburn Correctional Facility. On that date, he was accused of throwing feces and urine at four different employees of that institution during the course of two separate incidents which occurred at that facility. *See*, *e.g.*, Transcript of Change of Plea of Henry Benitez (11/12/02) ("Plea Tr.") at pp. 14-16. A Cayuga County Grand Jury thereafter returned Indictment Number 2002-146 ("Indictment") against Benitez, which instrument charged him

with four counts of aggravated harassment of an employee by an inmate.[1]

On November 12, 2002, Benitez appeared before Acting Cayuga County Court Judge Mark H. Fandrich for arraignment on the Indictment. At the start of that proceeding, Benitez advised the court that he did not want his appointed counsel, Douglas Bates, Esq., to represent Benitez, and that he instead wished to proceed *pro se* at that proceeding. *Id.* at p. 2. Judge Fandrich then questioned Benitez at length about his request, and ascertained from him facts which established that he understood the English language, he was not currently receiving medical treatment, and he did not suffer from any mental or physical condition that prevented him from understanding the nature of the proceedings against him. *Id.* at p. 3. Benitez also assured the court that he had sufficient time to reflect on his request to represent himself, *id.*, and volunteered that he had earned an associate's degree in law in 1990. *Id.* at p. 4. Benitez further advised Judge Fandrich that Benitez was familiar with the criminal justice system and that he had been involved in other criminal proceedings in the past. *Id.* at pp. 4-5. He then declared that he had not been threatened, coerced, or otherwise pressured against his will to waive his right to counsel. *Id.* at p. 5. The court then granted Benitez's request to proceed *pro se*, however Judge Fandrich appointed Attorney Bates to serve as Benitez's legal advisor at the proceeding. *Id.* at p. 8.

After his request to represent himself was granted, Benitez advised the court that he wished to explore the possibility of entering into a plea agreement relating to the charges. *Id.* at pp. 9-10. The prosecutor explained that if Benitez pleaded guilty to all four counts, the District

---

[1] Although various state court records that were provided to the Court refer to the Indictment's number, this Court was not provided with a copy of the actual Indictment.

Attorney would in turn recommend that Benitez receive concurrent, rather than consecutive, terms of imprisonment on his convictions. *Id.* at p. 10. Benitez then asked Judge Fandrich if Benitez would be transferred back to the Upstate Correctional Facility if he pleaded guilty, and explained that he did not wish to remain at the Five Points Correctional Facility because he was purportedly not receiving his prescription medication at that facility.[2] *Id.* at pp. 10-11. After the court declared that Benitez would likely be transferred back to the Upstate Correctional Facility after the criminal proceedings had ended, he stated that he was "willing to plead to the charges." *Id.* at p. 11.[3]

The trial court then proceeded with the plea allocution, during which Benitez candidly admitted that he had done "precisely what the indictment accuses me of having done ...." *Id.* at p. 15. Upon further questioning by the prosecutor, Benitez admitted that, on July 9, 2002, he requested that a nurse bring an inhaler to his cell, and when the nurse came to the "feed-up hatch," with that equipment, he threw a cupful of feces and urine at her, hitting both her and a sergeant standing near Benitez's cell with the mixture. *Id.* He further admitted that later on that same day, other officers came to his cell and, as he started to put his hands through the cell door to be handcuffed, he threw a second container containing feces at the officers, which resulted in two other officers being hit with that substance. *Id.* at pp. 15-16.

---

[2] Though not entirely clear from the record before the Court, it appears as though Benitez had been incarcerated at the Upstate Correctional Facility prior to the November, 2002 proceeding, but that he was thereafter placed in the Five Points Correctional Facility during the pendency of the criminal proceedings relating to the Indictment. *See* Plea Tr. at pp. 10-12.

[3] The correctional officer present in the courtroom informed the court that there was a "ninety percent" chance that Benitez would be placed in the Upstate Correctional Facility by the end of that week, and Benitez stated that the officer's statement was "satisfactory." Plea Tr. at p. 12.

After the court reminded Benitez of the crimes to which he was pleading guilty and the numerous rights he was waiving by his plea, Benitez declared that he understood his rights and that he was voluntarily waiving them by pleading guilty. *Id.* at pp. 16-18. The court then accepted Benitez's guilty plea. *Id.* at p. 21.

On January 7, 2003, Judge Fandrich sentenced Benitez, as a second felony offender, to concurrent terms of two and one-half to five years imprisonment on each of the four convictions, with those sentences to run consecutive to the sentence he was already serving on unrelated felony convictions. *See* Transcript of Sentencing of Henry Benitez (1/7/03) at pp. 2-7.

Benitez filed an appeal regarding the foregoing with the New York State Supreme Court Appellate Division, Fourth Department. In that appeal, appellate counsel argued as follows: (I) the Indictment was defective because it only identified the victims by their initials; (ii) the trial court "failed to make a searching inquiry" into Benitez's request to proceed *pro se* after he informed the court that he was "under medical duress;" (iii) the plea colloquy was insufficient because Benitez did not admit that his acts were intentional; and (iv) the imposed sentences were harsh and excessive. *See* Petitioner's Brief on Appeal. That appeal was opposed by the Cayuga County District Attorney, and in a decision dated December 30, 2004, the Appellate Division unanimously affirmed Benitez's convictions. *New York v. Benitez*, 13 A.D.3d 1234 (NY App. Div., 4th Dep't 2004).

On or about October 31, 2005, Benitez filed an application seeking a writ of *error coram nobis* in the Appellate Division in which he argued that he had received the ineffective assistance of appellate counsel because such counsel failed to timely notify Benitez of the Fourth Department's order affirming his conviction and of Benitez's right to seek leave to appeal that

decision from the Court of Appeals. *See* Application for Writ of *Error Coram Nobis* (10/31/05). The Appellate Division denied that petition on December 22, 2005. *New York v. Benitez*, 24 A.D.3d 1326 (NY App. Div., 4th Dep't 2005). Benitez sought leave to appeal that decision from New York's Court of Appeals, however on March 28, 2006, that request was denied. *New York v. Benitez*, 6 N.Y.3d 831 (2006).

Benitez commenced the present action on April 25, 2006. He asserts only one claim in his *pro se* petition; he argues that his waiver of his right to counsel was not voluntary, but that he was "compelled to do so in order to promptly be returned to Upstate and receive his medication." *See* Memorandum of Law in Support of Petition (Dkt. No. 4) at pp. 6-7.

Respondent asserts that this claim is unexhausted and, in any event, without merit. *See* Respondent's Memorandum of Law in Opposition to Petition (Dkt. No. 9) ("Resp. Mem.") at pp. 7-15. Benitez thereafter filed a Traverse in further support of his habeas application. *See* Dkt. No. 17 ("Traverse"). By Order filed September 17, 2008, this matter was re-assigned to the undersigned by Chief Judge Norman A. Mordue, Dkt. No. 21, and is now before this Court for disposition.[4]

## II.   DISCUSSION

### A.   Exhaustion Requirement of 28 U.S.C. § 2254

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....' " *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*,

---

[4] This Court hereby rescinds the prior reference of this action to Magistrate Judge George H. Lowe. *See* General Order No. 32.

269 F.3d 78, 89 [2d Cir. 2001]); *see also Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 [1999]). As the Supreme Court noted in *O'Sullivan*, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.* at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[5]

To satisfy this exhaustion requirement, a petitioner must have asserted all of the claims for which federal habeas review is sought in his application for leave to appeal to the New York Court of Appeals. *See Galdamez*, 394 F.3d at 74-75 (citations omitted); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (describing process for seeking leave to appeal to New York's Court of Appeals); *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) ("Until [petitioner] presents his claim to the highest state court–whether or not it seems likely that he will be held to be procedurally barred–he has not exhausted available state procedures."); *Jamison v. Girdich*, No. 03 CIV.4826, 2005 WL 2338660, at *4 (S.D.N.Y. Sept. 26, 2005); *Bennett v. Artuz*, 285 F.Supp.2d 305, 311 (E.D.N.Y. 2003) (citing *Grey v. Hoke*, 933 F.2d 117, 119 [2d Cir. 1991]); *McRae v. New York*, 271 F. Supp.2d 402, 406-07 (E.D.N.Y. 2003).

Respondent argues that Benitez never sought leave to appeal the Appellate Division's decision which, *inter alia*, denied Benitez's appellate claim that the County Court failed to "make

---

[5] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 845 (citations and internal quotation marks omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

6

a searching inquiry into [Benitez's] request to proceed without counsel." *See* Resp. Mem. at p. 8. Respondent further argues that Benitez has therefore not exhausted the sole claim he has asserted in his federal petition, and that such claim must accordingly be denied as procedurally forfeited. *Id.* at pp. 8-10.

Petitioner seems to claim that he did seek such leave. Specifically, in the portion of his petition wherein he is directed to indicate whether he sought leave to appeal the Appellate Division's decision, Benitez indicates that on March 28, 2006, New York's Court of Appeals denied a leave application filed by Benitez. *See* Petition at ¶ 9.

### B.      Review of Benitez's Petition

On March 28, 2006, the Court of Appeals denied a leave application filed by Benitez with that court. *See Benitez*, 6 N.Y.3d at 831. However, that order of the Court of Appeals related to Benitez's application seeking permission to appeal the Appellate Division's order denying his *coram nobis* application, not his direct appeal. *See Benitez*, 6 N.Y.3d at 831 (referencing *Benitez*, 24 A.D.3d at 1326). The Appellate Division's order denying Benitez's direct appeal–including his assertion that the trial court erred in permitting Benitez to plead guilty to the charges without the benefit of counsel–was issued on December 30, 2004. *See Benitez*, 13 A.D.3d at 1234. Benitez has not provided any evidence to this Court which suggests–much less establishes–that he ever sought leave to appeal that order from the Court of Appeals.[6]

---

[6] Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies. *Cruz v. Artuz*, 97-CV-2508, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002) (citing *Colon v. Johnson*, 19 F.Supp.2d 112, 119-20 [S.D.N.Y. 1998]); *Ruine v. Walsh*, 00 CIV. 3798, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citation omitted).

When a claim has never been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 [2d Cir. 1997]); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000). Therefore, this Court must determine whether it would be futile for Benitez to assert the above-mentioned claim in a leave application filed with New York's Court of Appeals.

An individual is afforded only thirty (30) days following the date of the Appellate Division's decision within which to timely file an application seeking leave to appeal. *See* New York Criminal Procedure Law ("CPL") § 460.10(5)(a); *Mathieu v. Giambruno*, No. 05 Civ. 8098, 2008 WL 383509, at *12 (S.D.N.Y. Feb. 11, 2008) (citations omitted); *Rodney v. Breslin*, No. 07CV4519, 2008 WL 2331455, at *3 (E.D.N.Y. June 3, 2008) (citations omitted).

Since Benitez never submitted any leave application to the Court of Appeals, he has necessarily failed to exhaust his state court remedies as to the only claim he has asserted herein. *Galdamez*, 394 F.3d at 74-75. Additionally, because his appeal was decided in 2004, he can no longer properly return to state court to exhaust those remedies.[7] Therefore, his federal claim must be both "deemed exhausted" and procedurally forfeited. *Spence v. Superintendent Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *see also Stone v. Stinson*, 121 F.Supp.2d 226, 236-37 (W.D.N.Y. 2000). This Court's review of the substance of his petition is

---

[7] Although a party is only permitted thirty days within which to seek leave to appeal following a decision from the Appellate Division, a litigant may seek an extension of that deadline "as long as no more than one year has passed since the running of the original thirty days." *Jolly v. Stinson*, CV 97-2000, 1998 WL 661472, at *1 (E.D.N.Y. Aug. 5, 1998) (citing CPL § 460.30).

8

therefore conditioned upon Benitez demonstrating cause for his default and resulting prejudice, or presenting evidence to show that he is "actually innocent" of the crimes of which he was convicted. *Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002) (citations omitted); *Spence*, 219 F.3d at 170); *Bennett*, 285 F.Supp.2d at 312.

To establish "cause" in this context, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Coleman*, 501 U.S. 722, 753 (1991); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citation omitted). Examples of external factors include "interference by officials," or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008).

Nowhere in either his petition or Traverse does Benitez attempt to establish legal cause for his procedural default.[8] Since Benitez has not established cause for his procedural default, this Court need not decide whether he suffered prejudice: federal habeas relief is unavailable as to procedurally barred claims under this limited exception permitting review of such claims

---

[8] Benitez could not properly claim that his appellate counsel's failure to file a leave application constituted the "cause" for his procedural default, because, as the Second Circuit has observed, that application "involved a discretionary appeal subsequent to his first appeal as of right, [therefore petitioner] had no constitutionally protected right to counsel." *Chalk v. Kuhlmann*, 311 F.3d 525, 528 (2d Cir. 2002). Thus, petitioner "cannot excuse his default by [a] claim of ineffective assistance of appellate counsel." *Id.*; *see also Quail v. Farrell*, 550 F. Supp.2d 470, 477-78 (S.D.N.Y. 2008).

9

unless **both** cause and prejudice is demonstrated.[9] *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("As Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice.") (citation omitted).

Finally, Benitez has never claimed–much less established–that he is actually innocent of the crimes of which he was convicted. In this regard, the Court notes that it has been observed that an individual who pleads guilty can rarely thereafter establish that he is actually innocent of such charges. *See Atkinson v. United States*, No. 05-CV-286, 2005 WL 3555946, at *6 (N.D.N.Y. Dec. 28, 2005) (McAvoy, S.J.).

Based upon the foregoing, the Court denies Benitez's petition as procedurally forfeited.

## III. CERTIFICATE OF APPEALABILITY

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[10]

28 U.S.C. § 2253(c)(1)(A). A Certificate of Appealability may be issued only "if the applicant

---

[9] The petitioner bears the burden of demonstrating cause for the procedural default and resulting prejudice. *See Simpson v. Portuondo*, 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

[10] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed. R. App. P. 22(b).

has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**ACCORDINGLY**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is

**ORDERED** that Benitez's petition (Dkt. No. 1) is **DENIED** and **DISMISSED**; and it is further

**ORDERED** that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

Dated: March 11, 2009
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge